NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0286n.06

No. 24-6135

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 30, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WENDELL ADRIAN BROWN,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

**ALICE M. BATCHELDER**, **Circuit Judge.** Wendell Brown appeals the 330-month prison sentence imposed at his resentencing hearing. Despite having advised his counsel in writing that he did not wish to be present at his resentencing, he now argues that the court, by proceeding in his absence, denied him the right to be present and the right to allocute. He also contends that the court erred by attributing 4.5 kilograms of methamphetamine to him. Finding no error, we **AFFIRM**.

**I.**

Wendell Brown was one of twelve individuals charged with conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). Brown was tried jointly with one of his codefendants, Gary Reed, and a jury convicted both men as charged. The district court sentenced Brown to a bottom-of-the-Guidelines sentence of 360 months' imprisonment based on his offense level of 38, which stemmed

from his responsibility for at least 4.5 kilograms of actual methamphetamine and criminal history category of V.

Brown appealed and we affirmed his conviction but vacated his sentence and remanded for resentencing. *United States v. Reed*, 72 F.4th 174 (6th Cir. 2023). During the trial, Brown had stipulated to the quantity and purity of 2.665 kilograms of "actual" methamphetamine, an amount 1.835 kilograms less than the 4.5-kilogram-minimum underlying Brown's sentence.[1] And "[t]here [was] simply no evidence in the record about the purity of" that 1.835 kilograms of methamphetamine. *Id*. at 193. So, we instructed the district court on remand to determine the purity of the non-stipulated-to methamphetamine and resentence Brown accordingly. *Id.*

Brown was not present for his resentencing hearing. In February 2024, the district court had ordered Brown to be brought to court for resentencing but later vacated that portion of its order after Brown's attorney informed the court that "[Brown] does not wish to be present at the resentencing hearing." Then at Brown's hearing in January 2025, Brown's attorney confirmed that it was his "belief and understanding" that Brown did not want to be present, and read a letter from Brown stating, "I really don't want to come in person if I can avoid it. I believe we can handle it without dragging me through all that." The court concluded that, in accordance with Federal Rule of Criminal Procedure 43(c)(1)(B), Brown had waived his right to be present for his resentencing and it proceeded without Brown.

At resentencing, the district court explained that the purpose of the hearing was to "make factual findings on remand as to the purity and quality of methamphetamine beyond the [stipulated to] 2.665 kilograms." The court relied on testimony from a federal agent that the

---

[1] Brown's codefendant argued at his resentencing hearing that the stipulated quantity of 2.665 kilograms contained a calculation error, and that the correct amount was actually 2.52 kilograms. Although it has no bearing on this appeal, we note that at Brown's resentencing, the district court accepted the lower stipulated total of 2.52 kilograms.

methamphetamine involved was "extremely high quality" and "98 to nearly 100 percent pure," and concluded that Brown was "conservatively" responsible for 5.10 kilograms of actual methamphetamine. Because 5.10 kilograms exceeded the relevant 4.5-kilogram threshold in the Guidelines, Brown's base offense level and Guidelines range remained unchanged from his initial sentencing. The court varied downward and sentenced Brown to 330 months' imprisonment. Brown appeals.

## II.

Brown alleges that the district court erred by resentencing him without his being present and taking his counsel's representations as true. While the parties dispute the appropriate standard of review, "[o]ur court has not announced the standard of review by which to judge preserved right-to-presence claims on appeal." *United States v. Pancholi*, 148 F.4th 382, 396 (6th Cir. 2025). Regardless, here, the standard of review does not matter because Brown not only failed to object to his absence, but he also *requested* that absence in the first instance, and his attorney confirmed that request to the court at the resentencing hearing. *See id.* (explaining that "the proper standard of review does not matter because [the defendant] failed to object to his exclusion from the in-chambers conference, and his counsel affirmatively assented to his exclusion").

Of course, "[t]here is no doubt that the accused has a constitutional right to be present at all the critical stages of his trial." *United States v. Marshall*, 248 F.3d 525, 534 (6th Cir. 2001). But "[t]his right . . . is a waivable one, so long as the defendant's waiver is knowing and voluntary." *Id.* Likewise, although Federal Rule of Criminal Procedure 43 states that the defendant "must be present" at every stage of his trial, including sentencing, it also allows waiver "when the defendant is voluntarily absent." Fed. R. Crim. P. 43(a), (c)(1)(A), (B). And a defendant may generally waive rights through counsel. *See United States v. Riddle*, 249 F.3d 529, 534-35 (6th Cir. 2001).

3

Brown explicitly stated in a letter to his attorney that he did not want to be present. Then, at the hearing, Brown's counsel reiterated that "[he] would not have advised the Court [in February] that [Brown] did not want to attend if [counsel] did not have [that letter]," and "confirm[ed] [his] belief and understanding that [Brown] wishe[d] to waive his right to be [present]." Brown's counsel also explained that he believed Brown did not want to lose his designation within the Bureau of Prisons or go through the lengthy travel process, as he was "settled in at where he [was] at." Therefore, Brown was "voluntarily absent" from his resentencing hearing. Fed. R. Crim. P. 43(c)(1)(B). Despite alleging that the court erred by believing his counsel, Brown does not allege that his counsel misrepresented his wishes by informing the court that he wanted to waive his right to be present. Nor does Brown allege that his waiver was not knowing and voluntary. Indeed, even now, he does not assert that he wanted to be present in the first place. So, because Brown waived his right to be present at his resentencing, he has no claim of error and we decline to address his argument that his inability to allocute prejudiced him.

**III.**

At Brown's resentencing, the district court "conclude[d] that all of [the] methamphetamine was pure or actual methamphetamine" after hearing testimony from the government that the methamphetamine in question was "almost certainly a highly pure form" and "at least 98 percent pure." The court explained that at least 5.10 kilograms of actual methamphetamine could "conservatively" be attributed to Brown.

Brown does not dispute the district court's relevant determination for purposes of his resentencing—its purity finding. Rather, he argues that because he merely engaged in individual drug transactions, the court erroneously attributed conspiracy-level quantities to him.

4

However, as the district court noted, Brown did not challenge in his first appeal "that the acts of the coconspirators in this case were within the scope of [his] agreement and that those acts were foreseeable to [him]." This forecloses Brown's argument now. *United States v. Pembrook*, 79 F.4th 720, 730 (6th Cir. 2023) ("An appellant in a second appeal cannot raise in that second appeal an error that could have been, but was not, raised and resolved in the first appeal."); *United States v. Patterson*, 878 F.3d 215, 218 (6th Cir. 2017) (finding that defendant's argument was "doubly out of bounds now" because he "never appealed that issue in his first trip to this court") (cleaned up).

Moreover, in Brown's first appeal we found that the "district court diligently and properly engaged in [the conspiracy-level-quantities] analysis to determine that the defendants could be held responsible for at least 4.5 kilograms of *some type of meth*." *Reed*, 72 F.4th at 191 (emphasis in original). In other words, we had already determined that the district court did not err in its drug-quantity-determination. Brown suggests no extraordinary circumstance that would support our revisiting the issue. *See United States v. Oglesby*, 55 F. App'x 353 (6th Cir. 2003) (order) ("Because we have rejected [defendant's] claims previously on the merits, the law-of-the-case doctrine relieves us from repeating ourselves. The doctrine dictates that issues, once decided, should be reopened only in extraordinary circumstances."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (explaining that "[a] court has the power to revisit prior decisions . . . [but] courts should be loathe [sic] to do so in the absence of extraordinary circumstances").

**CONCLUSION**

Based on the foregoing, we **AFFIRM** the judgment of the district court.

5